UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
KARLENE A. GORDON,                : 09-cv-4577(ERK)(MDG)
              Plaintiff,          :
                                  :
    - versus -                    : U.S. Courthouse
                                  : Brooklyn, New York
CITY OF NEW YORK, et al.,         :
              Defendant           : November 10, 2011
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
BEFORE THE HONORABLE MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


For the Plaintiff:          **Da'Tekena Adokiye**
                              **Barango-Tariah, Esq.**
                            Da' Tekena Barango-Tariah
                            Attorney at Law
                            25 Bond Street
                            Second Floor
                            Brooklyn, NY 11201


For the Defendant:          **Jeffrey S. Dantowitz, Esq.**
                            The City of New York
                            Law Department
                            100 Church Street
                            New York, NY 10007




Transcription Service:      **Transcription Plus II, Inc.**
                            3589 Tiana Street
                            Seaford, N.Y.  11783
                            Transcriptions2@verizon.net


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

1          THE CLERK:  <u>Gordon v. City of New York, et al</u>,

2  docket number 09-cv-4577.

3          Will counsel present please state their names

4  for the record.  For the plaintiff?

5          MR. BARANGO-TARIAH:  Da' Tekena Barango-Tariah.

6          Good afternoon, your Honor.

7          THE COURT:  And for the defendant?

8          MR. DANTOWITZ:  Jeffrey Dantowitz, Assistant

9  Corporation Counsel for the defendants.  Thank you, your

10  Honor, for allowing me again to appear by phone.

11          THE COURT:  And I note for the record that the

12  plaintiff, Ms. Gordon, is in the courtroom, too.

13          Now I think the docket sheet speaks for itself

14  but we did originally reach what I thought was a

15  settlement of this case and apparently there was no full

16  agreement and once -- after we had a discussion about the

17  inability -- the unwillingness of the plaintiff to sign

18  settlement documents, Mr. Barango-Tariah indicated that

19  he was going to move to withdraw and you haven't filed

20  such papers.  So, this matter was scheduled for a

21  conference today on the motion to withdraw.  So I don't

22  know what this signifies, Mr. Tariah.

23          MR. BARANGO-TARIAH:  Your Honor, what actually

24  happened was that I was supposed to consult with my

25  client and based on that, I would either -- your Honor,

1  what it was, I was supposed to be consulting with my

2  client and based on that, I was -- we were going to be

3  either proceeding with settlement or I was going to be

4  filing the motion to withdraw.  But when I spoke with my

5  client, she told me that she wanted more money and I said

6  okay, let me reach out to the defendants.

7          THE COURT:  Okay.  Then we'll -- okay, go

8  ahead.  Please don't discuss numbers because we're on the

9  record.

10          MR. BARANGO-TARIAH:  Yes, yes.

11          THE COURT:  And we will seal --

12          MR. BARANGO-TARIAH:  I will not, your Honor.

13          THE COURT:  Okay.  Go ahead.

14          MR. BARANGO-TARIAH:  So she said she needed

15  more money.  So I did reach out to the defendants and I

16  actually asked her how much she wanted and she told me

17  the amount.  I then reached out to the defendants.  They

18  subsequently filed a Rule 660(a).

19          So I called my client in to explain that to her

20  and then I subsequently asked her again "Is that money

21  that you say you want, is that what you want?"  She said

22  "Yes."  I said, "Okay.  Why don't I call defense counsel

23  while you are here and communicate that to defense

24  counsel?"

25          So, I did and I asked -- I told defense counsel

1  that my client was in the office and he said "Well, am I
2  sure that is the amount that she would settle for?"  And
3  I said "Yes."  And I said, "Well, she's is right here.
4  Do you want to speak to her?"  And my client then spoke
5  to the defense counsel and that was -- and that amount
6  was confirmed.

7           Subsequently, defense counsel offered us more
8  money.  It wasn't up to the amount.  He offered us more
9  money and we didn't -- I then spoke to defense counsel
10  and it was agreed that since she needed an amount of
11  money, they're going to be giving that lump sum money and
12  the balance will be coming out from attorney's fees.  And
13  I agreed.  So they did then come up to that amount.  And
14  based on that, the defense counsel then prepared a
15  stipulation.

16           However, my client has informed me today that
17  she is not going to take -- that she's not going to
18  settle for that amount anymore.  That she does want to
19  proceed.  So that's where we are, your Honor.

20           THE COURT:  Okay.  Maybe what I can do is let's
21  just seal this portion of the record and we'll just
22  continue these discussions, so we can talk about numbers
23  and I'll have a fuller idea of what the impious is to
24  settlement.  Okay.  So we'll close -- seal these
25  proceedings from this point until such time as we unseal

1  -- conduct unsealed proceedings.  Okay.

2         MR. DANTOWITZ:  Thank you, your Honor.  I

3  appreciate that, so we can speak freely about numbers and

4  hopefully reach some resolution today.  If I might be

5  heard just very briefly and I think we can -- I can bring

6  some numbers into play here.  Some time ago, this was

7  even before my involvement in the case, when Ms. Gantz

8  was on the case, it was my understanding that the

9  plaintiff had agreed to accept $21,000 in settlement of

10 the case.  Various papers were signed but when it came to

11 signing the release, Ms. Gordon balked and although she

12 signed it, she noted that she signed it under duress.  So

13 that was not effectual and not satisfactory for my

14 purposes.  So -- and I understood that.

15         So, Mr. Barango-Tariah and I worked very, very

16 hard.  He worked very, very hard with his client.  He and

17 I worked together, I think very, very well.  We tried to

18 reach some accommodation.  As he explained to me, his

19 client had indicated that she wanted a little bit more

20 money, that she wanted $27,000.  So, with his permission

21 and with him in the room, I spoke with Ms. Gordon and I

22 was given the indication that $27,000 would in fact

23 settle the case.

24         So I then spoke to counsel and I explained to

25 him the process again that I wasn't optimistic that we

1  would get anymore and I had actually -- when I spoke to

2  Ms. Gordon, conveyed to her that I was not certain but

3  that I was hopeful that she would keep an open mind given

4  the strength -- the various strengths and weaknesses of

5  each side's case.  That the money being offered was

6  significant and reasonable.

7           In any event, I went back to the comptroller's

8  office and I got some additional funds and again, under

9  the impression that this amount would settle the case.

10  Plaintiff's counsel and I discussed it and we have an

11  arrangement by which plaintiff would get $27,000, exactly

12  the amount that she was asking for.  So, I was optimistic

13  again that we could finally resolve this case to

14  everyone's satisfaction, to the plaintiff's satisfaction,

15  to plaintiff's counsel's satisfaction, the comptroller's

16  office and the defendant's satisfaction.  Everybody was

17  on board with the numbers.

18           So I'm very disappointed and a little

19  frustrated to now learn that Ms. Gordon is again balking

20  at what I again perceived to be an agreed upon

21  settlement.  I have no more money.  I will not be able to

22  get anymore money unfortunately and I think everyone's

23  preference is not to litigate the case, particularly in

24  light of the fact that as I said, Ms. Gordon would

25  receive in pocket, the very amount that she was

 1  demanding.

 2          THE COURT:  All right.  I guess it's actually

 3  pointless to talk about more numbers but let me just note

 4  for the record what the current demand is of the

 5  plaintiff.

 6          MR. BARANGO-TARIAH:  Is it plaintiff's counsel

 7  or plaintiff, your Honor?

 8          THE COURT:  Doesn't matter, just give me the --

 9  what the current demand is.  I don't know if it's been

10  communicated.

11          MR. BARANGO-TARIAH:  Your Honor, the current

12  demand is $27,000 and I believed that I had apparent

13  authority to settle the case.  However, today plaintiff

14  is indicating that she is not going to accept the

15  $27,000.  And we have gone ahead and drafted

16  stipulations, your Honor.

17          THE COURT:  Now, okay.  Well, okay, so what is

18  it that you want at this point, Ms. Gordon?

19          MS. GORDON:  I would like to go forward with

20  the --

21          THE CLERK:  I'm sorry, can you speak into the

22  microphone.

23          MS. GORDON:  Your Honor, I'd like to go forward

24  with the case.

25          THE COURT:  All right.  Then we need to proceed

1  and decide what we're going to do in this case.  Is it

2  still your intention to move to withdraw, Mr. Tariah?

3              MR. BARANGO-TARIAH:  Your Honor, I believe that

4  the plaintiff had given me apparent authority to settle

5  this case, in the light of this second separate case,

6  your Honor.

7              THE COURT:  Right.

8              MR. BARANGO-TARIAH:  I mean I -- I don't know

9  if -- at this point, I would be filing a motion to

10 withdraw, your Honor, because this has been quite

11 expensive for me, your Honor and perhaps if the plaintiff

12 wants to retain another counsel, I am quite happy,

13 your Honor.

14             THE COURT:  Well, you know what the rules are

15 and unless -- if Ms. Gordon consents to your withdrawal,

16 I will certainly give her time to obtain new counsel.  If

17 she doesn't consent, then we'll have to address your

18 desire to withdraw in writing on notice to the parties,

19 including Ms. Gordon obviously.

20             MR. BARANGO-TARIAH:  Yes.

21             THE COURT:  So --

22             MR. BARANGO-TARIAH:  Your Honor, there is a

23 Second Circuit case that is on point with what we are

24 dealing with, your Honor, and that is Louise Felnell v.

25 TLB Kent Company (ph.).  The reference for that case is

876 F.2d 498.  And I believe that based on that case,

this case should be settled for the amount that plaintiff

demanded, that she communicated to defense counsel and

that would have given me apparent authority to settle

that case, your Honor.

            MS. GORDON:  Your Honor, I just want to say

that was not my demand.  My demand was to -- from the

very beginning to go forward to trial with this case.

And when given the opportunity to put a figure out there,

it was nowhere near what the City was offering, no where

near.  But I was told time and again that the case would

be dismissed if we went forward.  Now it has come to a

point where they asked me to consider the amount and I've

considered it.  And I've sent Mr. Barango it in writing

that I did give it considering, but I cannot do that.  I

cannot.  It is much more than just dollars and cents

here, way more and that's what I've communicated to the

Court, to you, your Honor, to Mr. Barango, to everybody.


            THE COURT:  Well I think certainly my

recollection of what happened in this case comports with

the account that Mr. Tariah said.  I did encourage

settlement.  You did come in and talk to me at length.  I

thought we had reached an agreement on an amount and then

there was a problem because you signed the release with

1   the notation it was under protest and we had a further

2   conference which ultimately -- at which you ultimately

3   made clear you were not willing to settle for the amounts

4   discussed.  And it was at that point in time that I set

5   -- we did have a further conference and after Mr. Tariah

6   informed me by letter -- and that's really the last I

7   know of the discussions, he sent me a letter on September

8   23 advising that there could be no settlement.  He

9   confirmed that he wanted -- he wished to withdraw.  And I

10  set a motion schedule.

11          So, I think what Mr. Tariah has stated

12  concerned discussions afterwards -- after his letter; is

13  that correct?

14          MR. BARANGO-TARIAH:  Yes, your Honor.

15          THE COURT:  Okay.  And so I am not sure what

16  you're talking about.  Are you talking about the

17  enforceability of the settlement, Mr. Tariah or your

18  right to withdraw, the Second Circuit case that you are

19  citing?

20          MR. BARANGO-TARIAH:  Well, your Honor, the

21  Second Circuit case is the enforceability, your Honor.

22  It's the issue of enforceability.

23          THE COURT:  Well, you are not in a position,

24  Mr. Tariah to be making such a motion.  I'm not sure the

25  defendants are in a position to be making such a motion.

1  You wouldn't be properly representing your client in

2  making a motion, I think, to force your client to settle

3  but I haven't read the -- what, Fellner case you said is

4  what it is called?

5          MR. BARANGO-TARIAH:  Yeah, it's Louise Fellner.

6  Your Honor, this is the demand that she communicated and

7  we have gone ahead and prepared papers.  This is the

8  second time, your Honor.  I mean there's probably going

9  to be a situation where I'll be working on the case and

10 then she would communicate another demand.

11         MS. GORDON:  No, actually it isn't

12 (indiscernible).

13         MR. BARANGO-TARIAH:  Just -- so, your Honor,

14 that is what I am faced with here.

15         MS. GORDON:  As a matter of fact, last Tuesday

16 when Mr. Barango called me and told me that he received

17 the Rule 68 -- well, he didn't tell me what it was he

18 received but he told me to come into the office to see

19 him.  I went to see him and then he presented the Rule 68

20 which was to, you know -- he explained all of that and it

21 was at that time that he got --

22         THE CLERK:  I'm sorry.

23         MS. GORDON:  -- at that time that he encouraged

24 me to speak to Jeff --

25         THE COURT:  Dantowitz.

1      MS. GORDON:  Yes.  And I obliged them and I

2 listened.  And they asked me to consider and I considered

3 it.  And as much as we're going back and forth, but I

4 don't think -- I mean I am trying to accommodate and be

5 reasonable but I've asked from the very beginning that we

6 go forward with this case.  I really believe -- I'm

7 passionate about going forward with the case.  And even

8 though I've listened and have considered and -- but my

9 desire, my wish, my -- and this was conveyed to Mr.

10 Barango from the very beginning that I wished to go

11 forward with this case.

12      THE COURT:  Obviously this isn't a matter that

13 can be simply decided based on the statements made today.

14 So, I'll set a motion schedule and you can decide,

15 Mr. Tariah, how you wish -- what sort of motion you wish

16 to be filing.  I don't know what --

17      MR. DANTOWITZ:  Your Honor?

18      THE COURT:  Yes.

19      MR. DANTOWITZ:  Mr. Tariah had given me the

20 citation to the case that he mentioned to you.  I have

21 not, unfortunately been able to read it yet, but I would

22 not want to make such a motion until the representation

23 issue is decided, eve if I were to proceed in that way.

24      I suppose one question I might have is -- and I

25 can understand also, your Honor's point that it might be

1  uncomfortable or possibly even improper if Mr. Tariah

2  were to make that motion to compel the settlement, I

3  guess one initial question I have is whether Ms. Gordon

4  would in fact consent to Mr. Tariah's withdrawal which

5  would then obviate any of that motion practice, the

6  defendants wouldn't take the position that's -- I'll

7  leave that to the Court.

8           THE COURT:  Well that was certainly a question

9  that I had posed before Mr. Tariah made his statements

10  about the -- based on Fellner.

11          MR. DANTOWITZ:  I'm sorry, then if I'm

12  repeating it, I had not heard the response.  I apologize.

13          THE COURT:  No, I had mentioned that -- I

14  assumed that we would go back to considering whether or

15  not the plaintiff's counsel wished to proceed and if he

16  did, if he wanted to move to withdraw, whether or not the

17  plaintiff would consent.  And so --

18          MS. GORDON:  And my answer to that is

19  absolutely no -- absolutely not.

20          THE COURT:  As I said, I haven't read Fellner,

21  so I will set a motion schedule and you will consider

22  whether or not it's appropriate for you to be making a

23  motion to enforce a settlement given the difficulty, I

24  have no idea, I think it would be for you to be seeking

25  to enforcement a settlement, essentially against your

1  client of record.

2          MR. BARANGO-TARIAH:  Your Honor, I do not wish

3  to make a motion --

4          THE COURT:  To enforce a settlement or --

5          MR. BARANGO-TARIAH:  No.

6          THE COURT:  -- to withdraw?

7          MR. BARANGO-TARIAH:  I'm just bringing it to

8  the attention of the Court that based on the Second

9  Circuit law, I did have apparent authority to go ahead

10 and settle this case.

11         THE COURT:  I'm not going to listen to you

12 repeat your argument.  I'll set a motion schedule.  All I

13 am asking you is to consider whether or not it's

14 appropriate for you to be making the motion.  I have no

15 idea if Fellner was simply a decision to enforce an oral

16 agreement or whether or not it was a decision involving

17 an attorney seeking to enforce an agreement against his

18 own client.  Whatever the case may be, I'm not making any

19 kind of decision today.  Whatever happens next will have

20 to be on notice and fully briefed.  So I'll set a motion

21 schedule again and we'll see -- we'll decide that motion

22 when we have to decide it once it's fully briefed.

23         MR. BARANGO-TARIAH:  Your Honor -- and that

24 motion is for what, your Honor?

25         THE COURT:  That's for you to decide.  You

1  sound quite adamant that you have a right to bring a

2  motion to enforce the settlement.  I will just set a

3  motion schedule as to -- and I'll leave it to you to see

4  whether or not you have the right to seek to enforce the

5  settlement.

6           MR. BARANGO-TARIAH:  Your Honor, I would at

7  this --

8           THE COURT:  Okay.  Let me just note then, we're

9  back on the record and we'll so note.

10           Let me sum up what happened with respect to the

11  proceedings under seal, and that is that Mr. Tariah

12  advised that he felt that he -- that there was an

13  enforceable settlement under the circumstances here and

14  -- which are -- I guess fall within the ambit of Louis

15  Fellner, a Second Circuit case reported at 865 F.2d 498.

16  Now I haven't read the case, so I am somewhat

17  uncomfortable with the notion based on what I've heard,

18  with the notion that the plaintiff doesn't agree to the

19  settlement numbers offered and that her attorney would be

20  seeking to enforce the settlement.

21           Whatever happens needs to be determined sooner

22  rather than later.  So assuming you want to proceed to

23  enforce a settlement, I'll set a motion schedule and it

24  will have to be on notice to your client, Mr. Tariah.  I

25  just cannot believe that you would have the right to do

1  so but as I said, I haven't read Fellner and I'm quite

2  familiar with the body of case law in the Second Circuit

3  concerning the enforceability of settlements, oral

4  settlements made.

5           Anyway --

6           MR. DANTOWITZ:  Your Honor?

7           THE COURT:  Yes.

8           MR. DANTOWITZ:  I'm sorry to complicate

9  matters.  It may very well be that the plaintiff is not

10  entitled to bring such a motion.  In my own research, I

11  may -- it's all hypothetical, may find that the

12  defendants might want to bring such a motion.  I'm afraid

13  that motion might put Mr. Tariah in a conflict position.

14          THE COURT:  Absolutely.

15          MR. BARANGO-TARIAH:  Yeah, your Honor.  I do

16  not intend to bring such a motion.  I'm only bringing it

17  to the attention of the Court.

18          THE COURT:  Well then enough said.  I've

19  already -- I'm not going to repeat myself.  I think

20  Mr. Dantowitz is absolutely correct which is what I've

21  been indirectly suggesting I hear Ms. Gordon saying she

22  doesn't consent to your withdrawal to representation and

23  you had previously indicated you were going to seek to

24  withdraw if there was no settlement in this case.  Maybe

25  I should ask you first whether or not you seek to do so

1   and if you do, I'll set another schedule and if the

2   defendants wish to move to enforce the settlement, then

3   the defendants can do so too.

4           MR. BARANGO-TARIAH: Your Honor, I don't wish to

5   file any motions, your Honor.

6           THE COURT:  So you'll just proceed?

7           MR. BARANGO-TARIAH:  Yes.  Yes, your Honor.

8           THE COURT:  Okay.

9           MR. BARANGO-TARIAH:  If any motions are filed

10  since the plaintiff will not relieve me, I will just have

11  to respond to any motions that I filed, your Honor.

12          THE COURT:  Okay.  So are you going to file a

13  motion, Mr. Dantowitz?

14          MR. DANTOWITZ:  I haven't, as I mentioned, I'm

15  not yet familiar with the laws surrounding this subject

16  matter.  I've never come across it before, fortunately.

17  If I don't make such a motion, it's very likely we would

18  move for summary judgment.

19          THE COURT:  Okay.  I had previously set a

20  schedule for summary judgment and I'll set another

21  schedule for a summary judgment motion.

22          MR. DANTOWITZ:  Fine.

23          THE COURT:  And I will leave it -- well

24  actually, you can certainly move to enforce the

25  settlement within the procedural mechanism of a summary

1  judgment motion.  So I will just set a motion schedule

2  and you can raise whatever arguments you see fit to

3  raise, Mr. Dantowitz.

4          MR. DANTOWITZ:  Thank you.

5          THE COURT:  Okay.  Judge Korman doesn't have

6  any premotion conference requirements.  So I will set a

7  motion schedule.  I will just note in the minute entry

8  any dispositive motions must be filed by a date certain.

9  So, I'll hear from counsel what they propose.

10          MR. DANTOWITZ:  Your Honor, I would, with the

11  Court's indulgence, respectfully request that I have

12  until the end of the year to file the motion.

13          THE COURT:  Okay.  Is there any opposition?

14          MR. BARANGO-TARIAH:  No.  No, no, your Honor.

15  It's just that I will not be available in the first three

16  weeks of January, your Honor.

17          THE COURT:  Okay.  Are you around the end of

18  December?

19          MR. BARANGO-TARIAH:  Yes, I am, your Honor.

20          THE COURT:  Is it possible to shave some time

21  off Mr. Dantowitz?

22          MR. DANTOWITZ:  It's possible.  What I am

23  concerned about are December vacations.  I know I have my

24  own vacation --

25          THE COURT:  When --

1      MR. DANTOWITZ:  It's not set yet but my wife

2 and I have been talking about doing something in

3 December.  So I can try.

4      THE COURT:  Okay.  Well --

5      MR. DANTOWITZ:  I'm also concerned about

6 clients that need affidavits and such.

7      THE COURT:  Yes, I think given the holidays, it

8 may make sense to try to get the motion out before

9 Christmas.

10      MR. DANTOWITZ:  Uh-huh.

11      THE COURT:  So how about December 15?

12      MR. DANTOWITZ:  Okay.

13      THE COURT:  And then Mr. Tariah, the end of the

14 year or do you want -- are you around the first week of

15 January?

16      MR. BARANGO-TARIAH:  Yeah, I probably can

17 stretch it into the first week because I will need at

18 least three weeks to respond to that motion, your Honor.

19      THE COURT:  Okay.  January 6 and the

20 defendant's reply, I'll give you two weeks later, the

21 20th?

22      MR. DANTOWITZ:  Very good, your Honor.

23      THE COURT:  When will you be back in town,

24 Mr. Tariah?

25      MR. BARANGO-TARIAH:  I believe I'll be back

1  around about the 25th of January, your Honor.

2          THE COURT:  Okay.  So the motion will be fully

3  briefed on the 20th.  I can't remember now if you need to

4  set a motion return date.  I don't think so.  You'll need

5  to confer with Judge Korman's case manager on a return

6  date.  Just remember that Judge Korman has what we call

7  the bundling rule and no motions are to be -- no motion

8  papers are to be filed until the motion is fully

9  submitted -- I mean fully briefed.

10          MR. BARANGO-TARIAH:  Right.

11          THE COURT:  Okay?

12          MR. BARANGO-TARIAH:  Right.

13          THE COURT:  Okay.

14          MR. BARANGO-TARIAH:  Thanks, your Honor.

15          THE COURT:  Uh-huh.

16          MR. DANTOWITZ:  Thank you, your Honor.

17          MS. GORDON:  Thank you, your Honor.

18              (Matter concluded)

19                  -o0o-

20

21

22

23

24

25

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **28th** day of **November**, 2011.

*Linda Ferrara*

Linda Ferrara
Transcription Plus II, Inc.