UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

KARLENE A. GORDON,

                   Plaintiff,    <u>ORDER</u>

      - against -          09-CV-4577 (ERK) (MDG)

CITY OF NEW YORK, <u>et</u> <u>al</u>.,

                  Defendants.

- - - - - - - - - - - - - - - - - - -X

    In this action brought pursuant to 42 U.S.C. § 1983, Plaintiff Karlene Gordon asserts claims against Administration for Children's Services ("ACS") and various ACS employees (altogether "defendants") alleging claims arising from a May 4, 2000 report accusing plaintiff of maltreatment of her son that was later found to be unsubstantiated.  Am. Compl. ¶¶ 9-12, 15.  After the parties engaged in extended efforts to settle, defendants contend that the parties had reached an agreement to settle in early November 2011 and have moved to enforce the settlement.  Defs.' Mot. for Settlement Enforcement (ct. doc. 24) at 1.

    The Honorable Edward R. Korman has referred the defendants' motion to me for report and recommendation.  Evidentiary hearings were held on October 17, 2012 and December 11, 2012 at which plaintiff; her prior counsel, Mr. Da'Takena Barango-Tariah; defendants' counsel, Assistant Corporation Jeffrey Dantowitz; and defendants' former counsel, Assistant Corporation Counsel Toni Gantz testified.  After consideration of the parties' submissions, the evidence presented at the hearings and prior proceedings

herein, I set forth below my findings of fact and
recommendations.

## **FACTUAL FINDINGS**

Plaintiff retained Mr. Barango-Tariah to represent her in
all aspects of this case, including settlement.  Tr. of Oct. 17,
2012 Hearing ("10/17/12 Tr.") (ct. doc. 53) at 87.  Until his
discharge in December 2011, Mr. Barango-Tariah handled this case,
conducting all discovery and filed an Amended Complaint. <u>See</u>,
<u>e.g.</u>, ct. doc. 9, minute entries for 2/2/2010, 4/7/2010,
10/1/2010, 12/23/2010.

Near the completion of discovery in December 2010, Mr.
Barango-Tariah initiated settlement discussions with Ms. Gantz,
who then was lead attorney for defendants.  10/17/12 Tr. at 12,
15, 18.  As described below, these discussions continued through
November 2011.  Mr. Barango-Tariah discussed settlement with Ms.
Gordon, and she authorized him to engage in settlement
discussions with defendants.  <u>Id.</u> at 88, 92.  When he was
unavailable, Mr. Barango-Tariah engaged another attorney, Mr. Ugo
Umoh to appear on behalf of Ms. Gordon, with her consent .  <u>Id.</u>
at 88-89; <u>see also</u> minute entries for 4/4/2011, 5/5/2011,
5/10/11.  Discussions occurred between counsel primarily by
telephone and e-mail communication, and the parties also attended
settlement conferences before the Court.  <u>Id.</u> at 13-14.  Ms.
Gordon was present at a number of the conferences, and at no time
did she limit her attorney's authority to discuss settlement or

settle her claims.  <u>Id.</u> at Tr. 15 (Gantz testimony), 65-66
(Dantowitz testimony).

At a conference on April 4, 2011, counsel communicated
settlement figures to me and continued to exchange amounts
thereafter.  10/17/12 Tr. at 35-36.  On May 31, 2011, I held a
settlement conference with Ms. Gordon present who, in discussions
with me and in presence of the attorneys, expressed her
dissatisfaction with the defendants' offer of $12,000 at that
time.  <u>Id.</u> at 35-36, 40.[1]  As I understood her comments, she
found the offer insufficient in light of the child support
payments that she had been required to make.  <u>Id.</u> at 37. During a
telephone conference on June 13, 2011, in which Ms. Gordon did
not participate, Mr. Barango-Tariah communicated a revised demand
of $20,000, plus attorneys' fees.  <u>Id.</u> at 40-41.

The following day, counsel reached an agreement to settle
the case for $20,000, plus attorneys' fees, which they later
separately negotiated for approximately $25,000.  <u>Id.</u> at 21, 25
(Gantz testimony), 93 (Barango-Tariah testimony).  Ms. Ganz
advised the Court in a letter dated June 14, 2011 that the
parties had reached an "agreement in principle to settle
plaintiff's claims" and after negotiating fees, expected to
submit settlement papers shortly thereafter.  <u>See</u> Letter from Ms.

---

[1]  Since the submissions lacked detail in certain respects,
I informed the parties that I had additional information about
settlement amounts exchanged in conferences before me and related
what my notes contained.  10/17/12 Tr. 33-38, 40-41.

Gantz dated June 14, 2011 (ct. doc. 16).  In July, she stated
that the parties were still negotiating fees (ct. doc. 17), and
finally advised by letter filed on August 5, 2011 that "the
parties had reached an agreement in principle on all of
plaintiff's claims."  Ct. doc. 18.

Ms. Gantz then prepared and mailed to plaintiff's counsel a
set of settlement documents, including a release, a stipulation
of dismissal and a stipulation of settlement and discontinuance.
10/17/12 Tr. at 56-57.  However, Mr. Barango-Tariah did not
return the signed documents and later informed Ms. Gantz that
plaintiff had signed the release with the notation "Under duress"
above her signature, indicating her unhappiness with the figure
and her opinion that she had been pressured into accepting it.
Id. at 29-30 (Gantz testimony), 58 (Dantowitz testimony), 95-96
(Barango-Tariah testimony).  Ms. Gantz then advised in a letter
filed on September 15, 2011 that Ms. Gordon had refused to sign
an effective release of all her claims and requested that the
Court conduct a settlement conference "to facilitate a final
resolution of this matter."  See ct. doc. 19.  Ms. Gordon did not
expressly limit or revoke her attorney's authority to engage in
settlement discussions following that failed settlement, Id. at
97.

Attempting to deny that she had agreed to settle this case
for a sum certain, Ms. Gordon gave a different version of events
leading up to the purported June 2011 settlement.  She testified

-4-

that, in order to persuade her to settle this case, Mr. Barango-
Tariah suggested that they file a state court action against many
of the same defendants.  Transcript of Hearing on Dec. 11, 2012
("12/11/12 Tr.") at 16 (ct. doc. 54).  She explained that she
wrote "under duress" above her signature on the June 2011
releases because the releases terminated her claims against
defendants so that she would be unable to bring a state court
action and because she felt pressured to settle.  Id. at 17.  I
did not find plaintiff's version credible and it is contrary to
her position at the May conference to me, which focused primarily
on the inadequacy of the settlement offer from defendants and not
on a general unwillingness to settle.  I also find it highly
incredible that Mr. Barango-Tariah would have promised to file
additional actions in state court when general releases of claims
are standard in settlement agreements.

    Ms. Gordon and both attorneys appeared before me on
September 22, 2011 to discuss settlement.  10/17/12 Tr. at 30
(Gantz testimony), 59 (Dantowitz testimony).  This conference was
recorded with the knowledge and consent of the participants, who
later consented to public release of the transcript.  In private
discussions with the Court, Ms. Gordon again expressed her
unhappiness with the amount of the monies offered by the
defendants, but also was ambivalent about settling and stated she
would prefer to proceed to trial.  Compare Tr. of 9/22/11
Conference ("9/22/11 Tr.") (ct. doc. 37) at 3 ("Well, I don't

-5-

think the amount is anywhere close to addressing the egregious
act that resulted in my losing custody") and 15 ("And how long
are you giving me to think?" about accepting the $20,000
settlement) with 11 ("And so, I really, with all due respect, I
would like to go forward").  Mr. Barango-Tariah testified that
Ms. Gordon expressed similar ambivalence in conversations with
him following the September 2011 conference.  Id. at 102.
Although no agreement was reached, this Court addressed Ms.
Gordon at the conclusion of the conference and requested that she
continue to consider the matters discussed and confer with her
attorney on whether to accept the settlement.  Id. at 30.  Mr.
Barango-Tariah articulated his desire to withdraw as counsel for
Ms. Gordon if she did not accept a settlement at that time.  Id.
at 17-18.  By letter dated September 23, 2011, Mr. Barango-Tariah
advised that Ms. Gordon would not accept the settlement.  Ct.
doc. 20.  This Court thus ordered that the case be re-opened and
set a schedule for a motion to withdraw to be heard on November
10, 2011.  See electronic order dated 9/28/2011.

In October 2011, Mr. Dantowitz resumed his role as lead
attorney for defendants and continued settlement discussions with
plaintiff's counsel.  10/17/12 Tr. at 32 (Gantz testimony), 60-61
(Dantowitz testimony), 103-04 (Barango-Tariah testimony).  Mr.
Barango-Tariah testified that, after one such settlement
discussion, Ms. Gordon called him to ask if Mr. Dantowitz had
responded to the possibility of settling for a higher amount.

-6-

Id. at 104.  On October 24, 2011, defendants served on plaintiff an Offer of Judgment pursuant to Fed. R. Civ. P. 68 in the amount of $20,000.01, exclusive of attorneys' fees.  Id. at 63.  Mr. Barango-Tariah told his client that he had received the Rule 68 Offer, explained its significance, and requested that she contact him within 14 days to discuss whether she would accept it.  Id. at 106.

On October 26, 2011, Ms. Gordon visited Mr. Barango-Tariah's office and informed him that she would not accept the Rule 68 Offer.  10/17/12 Tr. at 107.  They continued to discuss an amount for settlement and, although she was willing to settle for $25,000, agreed that they would demand $27,000.  Id. at 108-09.  After they agreed on this amount, Mr. Barango-Tariah called Mr. Dantowitz and advised him that plaintiff would settle the case for $27,000.  Id. at 63 (Dantowitz testimony), 108-09 (Barango-Tariah testimony).  Ms. Gordon was present in her attorney's office during this call and personally spoke with Mr. Dantowitz to confirm that she assented to the $27,000 demand.  Id. at 64 (Dantowitz testimony), 109-12 (Barango-Tariah testimony).

Mr. Dantowitz informed both Ms. Gordon and her attorney that he did not have authority to offer $27,000 but that he would attempt to secure such authority from the Comptroller's Office.  Id. at 64 (Dantowitz testimony), 111 (Barango-Tariah testimony).  He suggested that Ms. Gordon keep an open mind to settling for a lower amount if he was not able to procure the full demand.  Id.

at 64. Following his discussions with plaintiff, Mr. Dantowitz contacted the Comptroller's Office to attempt to secure authority to settle for $27,000. Id. at 67-68.

I do not find credible Ms. Gordon's version of the October 26, 2011 telephone conversation that she never agreed to settle for $27,000 and that she had never heard the $27,000 figure prior to Mr. Dantowitz saying it. 12/11/12 Tr. at 26, 30, 50. I find the testimony of both counsel credible that Ms. Gordon confirmed that she wanted $27,000 to settlement, particularly Mr. Dantowitz's testimony that he would not have contacted the Comptroller's Office to seek increased settlement authority if he had not been assured by Ms. Gordon that she would settle for $27,000. 10/17/12 Tr. at 68.

On October 28, 2011, Mr. Dantowitz notified Mr. Barango-Tariah that the Comptroller's Office had authorized only an additional $1,500, thus increase the total settlement offer to $21,000. 10/17/12 Tr. at 68, 69. In the course of this discussion, Mr. Barango-Tariah offered to reduce his fees by $5,500 in order to increase the settlement payment to Ms. Gordon to the $27,000 she had requested. Id. at 69 (Dantowitz testimony), 114 (Barango-Tariah testimony). Mr. Dantowitz proceeded to revise the settlement documents that had previously been prepared by Ms. Gantz and mailed the settlement papers to Mr. Barango-Tariah for his review. 10/17/12 Tr. at 69. After requesting a minor change in the draft, on November 4, 2011 Mr.

Barango-Tariah signed the stipulations and returned them to defendants' counsel without signed releases, nothing in his cover letter that "I will send the other documents as soon as they are executed." Id. at 69-70 (Dantowitz testimony), 115-17 (Barango-Tariah testimony); Ex. C.

In the meantime, Mr. Barango-Tariah informed Ms. Gordon of the settlement, including his agreement to "volunteer" some of his attorneys' fees to contribute to the $27,000. 10/17/12 Tr. at 114. Ms. Gordon told her attorney that she did not want his money, but did not state she would not accept the $27,000. Id. After Mr. Barango-Tariah mailed the signed stipulations to Mr. Dantowitz, he called Ms. Gordon to ask her to come to his office for the purpose of signing the releases.[2] Id. at 118. During that visit Ms. Gordon did not reject the settlement, nor did she tell her attorney again that she did not want his money. Id. at 119. She did not sign the releases at that time. Id. at 120. Mr. Barango-Tariah and his client later communicated once or twice by telephone concerning the releases, during which Ms. Gordon promised to sign the releases and did not express concern about the settlement. Id. at 120-21. Mr. Barango-Tariah testified that she promised multiple times to come to his office to sign the releases but never did. Id. at 138.

---

[2] Mr. Barango-Tariah is unclear about the timing of Ms. Gordon's visit to his office and whether they only spoke on the telephone during this time. Tr. 118-120.

After Mr. Dantowitz received the settlement stipulations, the attorneys discussed a conference that had been scheduled by the Court to address Mr. Barango-Tariah's motion to withdraw and agreed to notify the Court of the settlement.  10/17/12 Tr. at 72.  Plaintiff's counsel assured Mr. Dantowitz that he would be able to bring a signed release to the conference.  Id.  At some point during this or another telephone call, Mr. Barango-Tariah provided opposing counsel with a citation for a case regarding enforcement of settlement.  12/11/12 Tr. at 5.  After counsel called chambers, I ordered that the conference previously scheduled for November 10, 2011 to address Mr. Barango-Tariah's motion to withdraw be converted into a telephone conference to hear the terms of the settlement and telephoned counsel to alert them of the change.  10/17/12 Tr. at 73.

Sometime before the November 10, 2011 conference, Mr. Barango-Tariah informed Ms. Gordon that he was going to a court conference to finalize the case.  Id. at 121, 130-31.  At that time, she was upset and indicated to her attorney that she did not accept the settlement.  Id. at 121.  She told him that she had e-mailed him and left him a voicemail message stating such. Id.  Mr. Barango-Tariah described his reaction as "shocked."  Id. The e-mail was time-stamped November 10, 2011 at 10:45 a.m. and contained Ms. Gordon's rejection of the Rule 68 Offer of $20,000, which she admitted they had discussed at their October 26, 2011 meeting.  12/11/12 Tr. at 60-62; Ex. G.  Ms. Gordon did not

-10-

explain why she had sent the e-mail two weeks after the October 26 meeting, other than to claim (unpersuasively) that she had not heard from her attorney in some time and she was afraid that he was going to settle without her authority. Id. at 64, 68-69.

Counsel and Ms. Gordon appeared in person for a conference held on November 10, 2011 at around 2:30 p.m. after Ms. Gordon told her attorney she would attend the conference in person. 12/11/12 at 29; 10/17/12 Tr. at 73; minute entry dated 10/10/2011.  At the conference, Mr. Dantowitz stated that the parties had reached a settlement during a telephone conversation held on October 26, 2011 (hereinafter the "October Settlement"). Tr. of Nov. 10, 2011 Conf. ("11/10/11 Tr.") (ct. doc. 23) at 3-4, 6; Defs.' Mem. in Support of Mot. to Enforce the Settlement (ct. doc. 27) at 2-3.  Mr. Dantowitz described the course of discussions between counsel in reaching the settlement and expressed "shock" and frustration in just learning "that Ms. Gordon is again balking at what I again perceived to be an agreed upon settlement."  11/10/11 Tr. at 6-7, 70.

Ms. Gordon confirmed she did not want to settle and wanted to go forward with the case.  11/10/11 Tr. at 7-8; 12/11/12 Tr. at 30.  Mr. Barango-Tariah responded that he intended to move to enforce the settlement rather than to continue with case.  Id. at 8.  When this Court questioned the propriety of counsel taking such action, Mr. Dantowitz stated that the defendants would also seek to enforce the settlement.  Id. at 8-17; Mem. to Enforce, at

-11-

3.    Defendant filed the instant motion a month later.  Mr. Barango-Tariah discussed the motion with Ms. Gordon and also sent her a letter dated December 12, 2011 stating that he did not believe plaintiff had a good faith defense to defendants' motion to enforce the settlement.  10/17/12 Tr. at 122-23.  Ms. Gordon subsequently terminated Mr. Barango-Tariah as her counsel and has proceed pro se since that time.  Id. at 124; see Letter from Ms. Gordon to Mr. Barango-Tariah dated Dec. 14, 2011 (ct. doc. 30).

## APPLICABLE LAW AND CONCLUSIONS

Much of the briefing in this matter focused on the issue of Mr. Barango-Tariah's authority to engage in settlement discussions and ultimately had authority to agree to a $27,000 settlement on behalf of Ms. Gordon.  However, even if Mr. Barango-Tariah did have authority to enter into a settlement, a second issue arises the circumstances of this case as to whether there is an enforceable agreement in the absence of a fully executed settlement agreement.

### Apparent Authority of Counsel

As courts have long recognized, "the decision to settle is the client's to make, not the attorney's."  Fennel v. TLB Kent Co., 854 F.2d 498, 501 (2d Cir. 1989) (citing United States v. Beebe, 180 U.S. 343, 350-53 (1901)).  However, recognizing "the unique nature of the attorney-client relationship, and consistent with the public policy favoring settlements," the Second Circuit

has established the presumption "that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so." In re Artha Mgmt., Inc., 91 F.3d 326, 329 (2d Cir.1996). A client may authorize his attorney to enter into a settlement through authority that may be actual or apparent. See United States v. Int'l Bhd. of Teamsters, 986 F.2d 15, 19-20 (2d Cir. 1993). An attorney has actual authority to settle where his client has "reason to know" that her "words and conduct" indicated to the attorney that he was authorized to settle for the particular amount. Teamsters, 986 F.2d at 20. Apparent authority is based on active representations of a principal to opposing counsel, not counsel's mere presence and participation in the normal stages of a lawsuit. See Fennell, 865 F.2d at 502; Kleine v. City of New York, 547 F.Supp.2d 315, 318-19 (S.D.N.Y. 2008) (counsel for the City appearing in the case and making offers did not have apparent authority, particularly in light of her repeated assertions that she needed authority from the city Comptroller to settle). In other words, "if an attorney has apparent authority to settle . . . and the opposing counsel has no reason to doubt that authority, the settlement will be upheld." Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989); Conway v. Brooklyn Union Gas Co., 236 F.Supp.2d 241, 247 (E.D.N.Y. 2002).

Defendants contend that Mr. Barango-Tariah had apparent authority to settle, since the settlement defendants seek to

enforce derive from "the representation of the principal to the third party" -- i.e., the representations to Mr. Dantowitz conveyed by Mr. Barango-Tariah that he was authorized to settle. Teamsters, 986 F.2d at 20; Valez, 2009 WL 3170098 at *8.  Among the factors that courts examine in determining whether a principal has bestowed apparent authority are:  (a) whether the settlement was reached in the client's presence, Fennell, 865 F.2d at 503; Alvarez v. City of New York, 146 F.Supp.2d 327, 335 (S.D.N.Y. 2001) (settlement found effective upon where, inter alia, principal was present at two settlement conferences where terms were agreed upon, and the settlement was reached the following day); (b) the principal's stated belief in the effectiveness of the settlement, Teamsters, 986 F.2d at 20, and (c) the promptness of the client's objections to the settlement. Fennell, 865 F.2d at 503; Teamsters, 986 F.2d at 20-21; Alvarez, 146 F.Supp.2d at 335.  In the Second Circuit, where an attorney of record has authority to enter into a settlement, a party challenging counsel's authority has a "not insubstantial" burden of proving that he lacked such authority.  In re Artha Mgmt, Inc., 91 F.3d 326, 329 (2d Cir. 1996); United States v. Int'l Brotherhood of Teamsters, 986 F.2d 15, 20 (2d Cir. 1993); see also Walker v. City of New York, 2006 WL 1662702 (E.D.N.Y. June 15, 2006) at *3.

As this Court found, during the October 26, 2011 telephone call, Mr. Barango-Tariah acted with his client's authority in

engaging in settlement discussions and making a $27,000 settlement demand.  Contrary to Ms. Gordon's assertions, this Court finds that she did not foreclose the possibility of settlement during that conversation, but rather, had expressed dissatisfaction primarily with the amount of settlement in earlier stages of this action, albeit she also showed some ambivalence in wanting to proceed with the case.  10/17/12 Tr. at 102 (Barango-Tariah testimony that, following the September 2011 conference with the Court, Ms. Gordon told him that she wanted to move forward with the case, but in the same visit discussed the possibility of settlement); 9/22/11 Tr. at 3, 11, 15. Significantly, during the October 26, 2011 telephone call, Ms. Gordon confirmed her assent to the $27,000 demand forwarded by her attorney and did so in a way that gave neither Mr. Dantowitz nor her attorney any reason to doubt she would not accept a settlement in that amount.

Had Mr. Dantowtiz responded immediately during the call by offering Ms. Gordon $27,000 and counsel's fees, then there would be no need to address whether Mr. Barango-Tariah had authority to engage in settlement discussions.  He clearly had apparent and actual authority to make the $27,000 settlement demand. However, as Mr. Dantowitz admitted, he had settlement authority for only $20,000 and needed to get approval from the Controller's Office to settle for the higher amount demanded.  When he got authority for only $21,500, the defendants ultimately reached a settlement

offer of $27,000, with Mr. Barango-Tariah's concession to reduce
his fees by $5,500 to apply toward the settlement to Ms. Gordon.

Mr. Barango-Tariah later accepted this settlement and signed
the stipulations of settlement and dismissal on behalf of his
client.  In light of my findings that Ms. Gordon agreed during
the October 26 telephone call that she would accept $27,000 to
settle and Mr. Barango-Tariah's agreement two days later to
reduce fees so that his client could receive this amount, the
defendants are justified in believing that Mr. Barango-Tariah
acted with apparent authority on October 28 to accept the
settlement offered by the defendants.  Believing that Ms. Gordon
had not repudiated her agreement to settle for $27,000, Mr.
Barango-Tariah also subsequently acted with apparent authority in
signing the stipulations of settlement and dismissal (ct. doc.
26, Exs. 1-2) based on his belief following discussions with Ms.
Gordon that she would provide releases and he so stated to Mr.
Dantowitz.  In light of Ms. Gordon's earlier agreement to accept
$27,000, Mr. Dantowitz had no reason to doubt that Mr. Barango-
Tariah had acted with his client's authority to agree to the
revised settlement terms.  Thus, it was "subjectively and
objectively reasonable" for defendants to believe that Mr.
Barango-Tariah had authority to accept the settlement as
modified.  See Walker v. City of New York, 2006 WL 1662702 at *6
(E.D.N.Y. Jun 15, 2006).  Given the heavy burden placed on a
client to challenge the authority of her attorney and defendants'

-16-

reasonable reliance, I find that Mr. Barango-Tariah had apparent authority to accept the revised settlement.  See Restatement (Second) of Agency § 8, cmt. c (2014) (stating that apparent authority exists if it is reasonable for a third person dealing with the agent to believe that the agent is authorized, and that third person believes that the agent is authorized); see also Trustees of UIU Health and Welfare Fund v. New York Flame Proofing Co., Inc., 828 F.2d 79, 83-84 (2d Cir. 1987).

However, it is troubling that Mr. Barango-Tariah, who had been prepared seek to withdraw if no settlement was reached, could convey he had authority on Ms. Gordon's to accept the settlement without affirmatively confirming that she did accept all of the settlement terms.  Although she had not rejected the $27,000 settlement amount offered her, she clearly did not agree to accept this amount through a reallocation of settlement monies which resulted in a reduction of her attorney's fees.  This concern, which stems from the underlying issue whether a complete agreement on settlement was reached, is discussed further below since there was no fully executed settlement agreement here.

**Enforceability of the Oral Settlement**

Generally, "[w]here a settlement agreement has not been reduced to writing, courts must determine whether the parties intended to bound by the agreement in the absence of a writing." Watson v. City of New York, 2012 WL 6006066 at *2 ((E.D.N.Y. 2012) (citing Powell v. Omnicom, 497 F.3d 125, 129 (2d Cir.

-17-

2007)). Likewise, where all documents that are part of a settlement are not executed, courts also must consider whether the oral agreement underlying the settlement is enforceable. See, e.g., Langreich v. Greunbaum, 775 F.Supp.2d 630, 633 (S.D.N.Y. 2011) (where both sets of attorneys signed stipulations of discontinuance but defendants did not sign settlement document, settlement analyzed as oral agreement); Vacco v. Harrah's Operating Co., 661 F.Supp.2d 186, 196 (N.D.N.Y. 2009) (where all necessary parties but one had signed the stipulation and release, settlement was analyzed as oral agreement).

When determining the enforceability of an oral settlement agreement,[3] the Court must examine "whether parties intended to be bound by [the] agreement in the absence of a document executed by both sides." Ciaramella, 131 F.3d at 323 (citing Winston v. Mediafare Entmt. Corp., 777 F.2d 78, 80-81 (2d Cir. 1985)). The Second Circuit has articulated four factors, commonly known as the Winston factors to guide this inquiry. Id. The four Winston factors must consider are:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing;
> (2) whether there has been partial performance of the

---

[3] This Court need not decide whether federal or New York law governs the interpretation of a settlement agreement under § 1983 because "there is no material difference between the applicable state law or federal common law standard." See, e.g., Kaczmarcysk v. Dutton, 414 Fed. Appx. 354 355 (2d Cir. 2011); Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 322 (2d Cir. 1997); Pierre v. Chase Inv. Servs. Corp., 2013 WL 709055, at *3, n. 33 (S.D.N.Y. 2013).

contract; (3) whether all of the terms of the alleged
contract have been agreed upon; and (4) whether the
agreement at issue is the type of contract that is usually
committed to writing.

Ciaramella, 131 F.3d, at 323.  These factors are used for

analyzing oral agreements reached both in court and outside the

courtroom.  See, e.g., Powell, 497 F.3d at 127 (purported

settlement put on the record before the Court); Vacold LLC v.

Cerami, 545 F.3d 114, 120 (2d Cir. 2008) (purported agreement

reached between parties during negotiations prior to lawsuit);

Ciaramella, 131 F.3d at 321 (purported settlement reached during

negotiations between the parties); Winston, 777 F.2d at 78

(purported settlement reached at discussions held prior to

scheduled conference before the Court).  "No single factor is

decisive, but each provides significant guidance."  Ciaramella,

131 F.3d at 323.  Whether the parties intended to be bound absent

a written agreement is "a question of fact, to be determined by

examination of the totality of the circumstances."  Ciaramella,

131 F.3d at 323; see also Vacold, 545 F.3d 127 (courts must

"look at this language and the . . . agreement as a whole, in

light of the totality of the circumstances, which includes the

five prior drafts").

With respect to the first factor, the stipulation of

settlement prepared by Mr. Dantowitz, which appears to be in the

standard form used by Corporation Counsel's office in actions

brought under Section 1983, requires plaintiff and her counsel to

"execute and deliver to defendants' counsel all documents

-19-

necessary to effect this settlement, including . . . releases from plaintiff and Da'Tekena Barango-Tariah, Esq." Stipulation of Settlement (ct. doc. 26-2) at ¶ 6. The stipulation also contains a merger clause which specifies that "no oral agreement entered into at any time prior to the execution ofthese Stipulations . . . shall be deemed to exist, or to bind the parties hereto, or to vary the terms and conditions contained in these Stipulations." Id. ¶ 10. Ordinarily, such language "is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." Ciaramella, 131 F.3d, at 324-25 (discussing merger clause); Lyman v. New York and Presbyterian Hosp., 2012 WL 6135354, at *5-*6 (S.D.N.Y. 2012) adopted at 2013 WL 427178 (S.D.N.Y. 2013) (language that execution of written agreement was necessary to trigger party's obligations and merger clause in draft agreement indicated intent not to be bound).

Courts have differed in their assessment of the language used by the City of New York in Section 1983 settlements when faced with the issue whether there is an enforceable agreement in the absence of fully executed documents. Some have found the merger clause and requirement to provide releases as evidence that the parties did not intend to be bound absent a fully executed settlement. Compare, e.g. Vesterhalt v. City of New York, 667 F.Supp.2d 292, 303 ((S.D.N.Y. 2009) (finding that the provisions required "a specific form of acceptance of their

settlement offer, that is, signing and returning the documents")
with Delgrosso v. City of New York, 2013 WL 5202581 at *7-8
(E.D.N.Y. 2013) (distinguishing Ciaramella because parties were
also required to sign under agreement and finding delivery of
release an obligation to perform under the settlement rather than
a reservation).  Other courts have also looked to the conduct of
parties in the delivering of the settlement documents.  Edwards
v. City of New York, 2009 WL 2601311, at *4 (E.D.N.Y. 2009)
(examining conflicting communications after agreement to see if
there was an intent to be bound only by a writing).

Here, there was little information regarding the
interactions of the parties in connection with the delivery of
the settlement documents to support a finding that either side
sought to subject their agreement to a written agreement.  On the
one hand, since Ms. Ganz had previously provided stipulations and
a release earlier in June with respect to the agreement she
thought had been reached, the language of the written agreement
was likely not to give rise to much dispute.  However, in
returning only the stipulations and promising to provide the
release later, Mr. Barango-Tariah appeared to suggest that the
settlement would be completed upon production of a release at the
November conference.  I thus treat this factor as "effectively
neutral."  Id.

Second, there has been no partial performance.  Ms. Gordon
expressed her opposition to the motion without signing the

release, and she did so before counsel for the City signed either of the stipulations or took steps to begin the processing for settlement funds.  Here, as in Edwards, because "[t]he only meaningful act the city had to perform was to issue a payment to Edwards which has not occurred, . . . the second Winston factor cuts against enforcement of the agreement."  Edwards, 2009 WL 2601311, at *4; see also Silas v. City of New York, 536 F.Supp.2d 353, 358 (S.D.N.Y. 2008).  While some courts have found that preparation of a settlement agreement is sufficient to constitute partial performance, see, e.g., Case v. City of New York, 2012 WL 5951296 at *6, this fact carries less weight here since the attorneys had previously exchanged settlement documents and ultimately decided to proceed when Ms. Gordon refused to agree to a settlement reached earlier in June 2011 and provide an unconditional release.

Third, and most importantly, at the time that Ms. Gordon agreed to settle her claim for $27,000, there were still open terms to be negotiated.  As Mr. Dantowitz acknowledged, at the time Ms. Gordon agreed to settle for $27,000, he did not have authority to agree to a settlement for that amount, plus attorneys' fees, nor did he ever receive such authority from the Comptroller's Office.  10/17/12 Tr. at 67.  Rather, he suggested at that time to Ms. Gordon to consider the possibility of settling for a lower amount if he was unable to procure the requested funds.  Id. at 64.  This exchange establishes that no

agreement was reached during the October 26, 2011 telephone call since "the fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties." Schurr v. Austin Galleries of Ill., Inc., 719 F.2d 571, 576 (2d Cir. 1983) (citations omitted). In addition, all parties must give "sufficiently definite" assent to all material terms. See Madeira v. Affordable Housing Found., Inc., 469 F.3d 219, 252 (2d Cir. 2006). A material term of a contract is one "that must be sufficiently definite to allow the contract to be enforceable." S.E.C. v. Rorech, 720 F.Supp.2d 367, 408 (S.D.N.Y. 2010) (citing Local 917, Int'l Bd. of Teamsters v. N.L.R.B., 577 F.3d 70, 74 (2d Cir. 2009)). Whether there has been a meeting of the minds on all essential terms is a question of fact that must be resolved by analyzing the totality of the circumstances. See United States v. Sforza, 326 F.3d 107, 116 (2d Cir. 2003); Benicorp Ins. Co. v. National Medical Health Card Systems, Inc., 447 F. Supp. 2d 329, 337 (S.D.N.Y. 2006).

Both counsel apparently assumed that the only material term to the settlement was the amount of the payment Ms. Gordon. Although the source of payment is not always a material term in a contract, see Nuccio v. Me and the Gang, Ltd., 204 A.D.2d 289, 290, 611 N.Y.S.2d 275 (2d Dept. 1994) (source of funds immaterial where settlement payment came from insurance carrier instead of defendant); Cirrincione v. Joseph A. Bruno, Inc., 143 A.D.2d 722, 723, 533 N.Y.S.2d 290, 291 (2d Dept. 1988) (source of settlement

payment immaterial to plaintiff where insurance carrier had been placed under supervision of state agency), in this instance Mr. Barango-Tariah's agreement to contribute $5,500 to Ms. Gordon's recovery is a material term of the agreement by changing the amount of the total settlement package and obliging Mr. Barango-Tariah to relinquish a portion of his fees to Ms. Gordon.

By their conduct, counsel evidenced a recognition that any settlement was also dependent on agreement to the amount of attorneys fees, undoubtedly because parties prevailing on claims brought under Section 1983 are entitled to recover attorneys fees. See 42 U.S.C. § 1988. Thus, after the parties agreed to a settlement amount of $20,000 in June 2011, Ms. Gantz advised that the parties would be negotiating the amount of fees and finally notified the Court until August 5, 2011 that the parties had agreed to "in principle on all of plaintiff's claims." Ct. doc. 18 (emphasis added); see also ct. docs. 16, 17.

Importantly, even though the Supreme Court has acknowledged "the practical reality that attorneys are the beneficiaries and, almost always, the ultimate recipients of the fees" awarded under Section 1988, the Court has also emphasized that it is the client and not the lawyer who is entitled to receive fees under this statute. Astrue v. Ratliff, 560 U.S. 586, 597-598 (2010) (citations omitted). In conformance with this principle, the written stipulation provided that the City of New York would pay the settlement amount of $47,026.15 to plaintiff Karlene Gordon,

with payment to be made to "Da'Tekena Barango-Tariah, as attorney
for Karlene Gordon" and counsel would be responsible for payment
plaintiff $27,000.  Ex. C at ¶ 3.  Likewise, the allocation of
fees must be approved by the settling parties, as they belong to
the client, and not to the attorney.  Cf. Mireku v. Red Vision
Systems, Inc., No. 11-cv-9671, 2013 WL 6335978, at *3 (S.D.N.Y.
Dec. 6, 2013) (approving settlement where, "plaintiff ha[d]
explicitly approved the agreement, including the amount of fees
to her counsel, as she must because the right to recover
attorney's fees belongs to the client, not the attorney")
(quoting Morgan v. Sasso, No. 05-cv-4716, 2009 WL 1940785, at
*3-*4 (E.D.N.Y. Jul. 2, 2009)).

    Thus, notwithstanding Ms. Gordon's agreement to accept
$27,000 on October 26, 2011, her agreement is not sufficient to
constitute an acceptance of the entire settlement that counsel
later reached.  Nothing in the discussions on that day could be
construed as an agreement that she had agree to payment of the
$27,000 through a reallocation of funds paid by the City of New
York; rather, all participants expected that any settlement would
be dependent on an increase of the total settlement monies
offered.  When Mr. Barango-Tariah communicated the details of the
final settlement to plaintiff, as he was obligated to do, Ms.
Gordon insisted that she did not want Mr. Barango-Tariah's money.
10/17/12 Tr. at 114; see, Siracuse v. Program for the Development
of Human Potential, 2012 WL 1624291, at *21 (E.D.N.Y. 2012)

("counsel is required to inform their client of any offer").  By her refusal, Ms. Gordon made clear that she considered the source of the settlement funds and the amount of the fees to be paid to Mr. Barango-Tariah to be a material terms of the agreement.

Accordingly, I find that because open terms existed at the time that Ms. Gordon assented to the $27,000 demand, the third Winston factor weighs against enforcing the settlement.

The final factor is whether this is the type of agreement that is usually committed to writing.  In this regard, the Second Circuit has reiterated that "'settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court.'" Powell, 497 F.3d at 131 (quoting Ciaramella, 131 F.3d at 326) (internal alterations omitted).  The purpose of "announcing the terms of an agreement on the record in open court is to ensure that there are at least 'some formal entries . . . to memorialize the critical litigation events and to perform a 'cautionary function' whereby the parties' acceptance is considered and deliberate.'" Powell, 497 F.3d at 131 (quoting Willgerodt v. Hohri, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) and Tocker v. City of N.Y., 22 A.D.3d 311, 802 N.Y.S.2d 147, 148 (2005)) (internal citations omitted); see also Edwards, 2009 WL 2601311, at *5 ("The parties agree that a settlement of this kind [in an unlawful arrest case against the City of New York] is usually memorialized in a writing"); Cook v. Huckabey, 2009 WL 3245278, at *7 (E.D.N.Y. 2009) (citing cases for the

proposition that oral agreements are upheld only when litigant demonstrates "a minimum of 'substantial compliance' with the 'open court' requirements of C.P.L.R. Section 2104").  As discussed by the court in Silas v. City of New York, 536 F.Supp.2d at 361, the practice in New York is influenced by the requirements of C.P.L.R. Section 2104 that settlements be in writing or stated on the record in open court.

Nonetheless, the Second Circuit has also independently looked to the intentions of the parties and "has found that the complexity of the underlying agreement is an indication of whether the parties reasonably could have expected to bind themselves orally." Ciaramella, 131 F.3d, at 326.  Some courts in this Circuit have concluded that this factor weighs in favor of enforcing the settlement where an agreement is similarly straightforward, but most of the cases also involved other evidence of agreement to settlement terms.  See, e.g., Case v. City of New York, 2012 WL 595126, at *7 (S.D.N.Y. 2012) (fourth factor weighed in favor of enforcement for settlement of excessive force claims for $1,250 and parties exchanged draft agreements and letters confirming settlement); Aguiar v. New York, 2008 WL 4386761, at *10-*11 (S.D.N.Y. 2008) ("In sum, the agreement in issue is not the complex type of settlement that would typically need to be reduced to writing" in case where settlement placed on the record in open court); Walker, 2006 WL 1662702, at *9 (finding that parties intended to be bound by oral

agreement where counsel settled following a conference with the
Court and, after a dispute, subsequently informed the Court again
that the matter was settled and defendants mailed settlement
documents to plaintiff); Alvarez, 146 F.Supp.2d at 338
(settlement agreement was sufficiently documented where Court
held "extensive settlement conferences," plaintiff's counsel
reported his acceptance to the Court and Court memorialized the
agreement during a subsequent conference).

The settlement at issue here calls for payment of a moderate
sum of money in exchange for a general release, but the relative
simplicity of the monetary terms of the settlement is not
sufficient, in itself, to establish that the parties did not
intend to commit the settlement to writing.  The attorneys did,
in fact, proceed to exchange drafts of the stipulation of
settlement, as is the practice of the City of New York to embody
a settlement in writing.  See, e.g., Edwards, 2009 WL 2601311, at
*5 (noting that "[t]he parties agree that a settlement of this
kind is usually memorialized in a writing").  Needless to say,
the settlement ultimately memorialized in the stipulations
contained terms that only Mr. Barango-Tariah clearly accepted and
there is no other act on the part of Ms. Gordon to show that she
did accept the settlement with the reallocation of payments.
Thus, I find that this factor also weighs against enforcement.

In sum, although this Court credits defendants' assertion
that Ms. Gordon did agree to accept a $27,000 settlement during

the October 26, 2011 telephone conversation, I find that three of the four <u>Winston</u> factors weigh against a finding that the parties reached a binding oral agreement, because the parties never reached an agreement before the Court and second, because the settlement to which Ms. Gordon accepted on October 26, 2011 was not the same material agreement that Mr. Barango-Tariah ultimately reached with defendants.

<u>CONCLUSION</u>

For the foregoing reasons, I recommend that the Court deny defendants' motion to enforce the settlement.

A copy of this report and recommendation will be filed and notice sent electronically to defendants on this date and mailed to plaintiff.  Objections to the Report and Recommendation must be filed with the Clerk of Court, with a copy to the Honorable Edward R. Korman and the undersigned, by September 25, 2014. Failure to file objections within the time specified waives the right to appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated:     Brooklyn, New York
           September 8, 2014

                              /s/_____
                              MARILYN D. GO
                              UNITED STATES MAGISTRATE JUDGE