| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
|---|---|
| KARLENE A. GORDON,<br><br>                    Plaintiff,<br><br>– against –<br><br>THE CITY OF NEW YORK, CARMEN S. RUIZ, BERTHA STALLINGS, REBECCA ROBINSON, AND ADMINISTRATION FOR CHILDREN'S SERVICES,<br><br>                    Defendants. | **MEMORANDUM & ORDER**<br><br>09-CV-04577 (ERK) |

KORMAN, *J.*:

Defendants appeal from a thoughtful and comprehensive recommendation by U.S. Magistrate Judge Marilyn D. Go that I deny defendants' motion to enforce the settlement agreement into which the parties entered. I summarize below the relevant facts, as found by Judge Go.[1] I adopt her findings of fact with one exception, to which I make reference in the discussion that follows.

## I. BACKGROUND

Plaintiff Karlene Gordon brought an action against the Administration for Children's Services ("ACS") and various ACS employees (collectively, "defendants" or "the City") pursuant to 42 U.S.C. § 1983 for claims arising out of an ACS report accusing plaintiff of mistreating her son, which was later found to be unsubstantiated. Rep. & Rec. at 1, ECF 59. She entered into a written retainer agreement with a private attorney, Da'Tekena Barango-Tariah, to represent her in this matter. Letter of Engagement (Under Seal), ECF 63. Near the completion

---

[1] The facts described in the R&R are largely summarized in the transcript of November 10, 2011. ECF 23.

1

of discovery in December 2010, Mr. Barango-Tariah initiated settlement discussions with defense counsel. Rep. & Rec. at 2. These discussions continued through November 2011. *Id.*

In August 2011, defense counsel notified the court that the parties had "reached an agreement in principle on all of plaintiff's claims," *id.* at 4, in which the City agreed to pay plaintiff $20,000 in compensatory damages and approximately $25,500 in attorney's fees. 10/17/12 Tr. at 19:23-20:1, 56:13-23. The amount of attorney's fees had been separately negotiated between Mr. Barango-Tariah and defense counsel. *Id.* Defense counsel subsequently prepared and mailed to Mr. Barango-Tariah a set of settlement documents, including a stipulation of settlement containing the relevant figures—roughly $45,500 in total—and a release form for plaintiff to sign. Rep. & Rec. at 4; 10/17/12 Tr. at 56:13-23. Plaintiff later acknowledged under oath that she "read the stipulation of settlement that contained the terms of the [September] agreement." 12/11/12 Tr. at 44:4-7. Mr. Barango-Tariah did not, however, return the signed documents, instead informing defense counsel that plaintiff had signed the release with the notation "Under duress" above her signature, indicating her unhappiness with the $20,000 figure and her opinion that she had been pressured into accepting it. Rep. & Rec. at 4; 10/17/12 Tr. at 95:18-24. At a settlement conference before Judge Go on September 22, 2011, which plaintiff attended, Mr. Barango-Tariah expressed "surprise[]" at plaintiff's unhappiness with the amount of recovery, explaining: "This case has been settled for $20,000 and she does not pay attorney's fees from that $20,000. The attorney's fees are separate." 9/22/11 Tr. at 11:18-22.

On October 24, 2011, defendants served on plaintiff an Offer of Judgment in the amount of $20,000.01 "plus reasonable attorney's fees accrued to date." 10/17/12 Tr. at 61:12-15. On October 26, 2011, plaintiff informed Mr. Barango-Tariah that she would not accept that offer,

but would be willing to settle for $25,000. Rep. & Rec. at 7. They ultimately agreed to demand $27,000. *Id.* With plaintiff still in his office, Mr. Barango-Tariah called defense attorney Jeffrey Dantowitz to communicate that plaintiff would be willing to settle the case for $27,000 "in addition to the attorney's fees." *Id.*; 10/17/12 Tr. at 63:5-19. During that conversation, Mr. Barango-Tariah passed the phone to plaintiff, who told Mr. Dantowitz directly that she assented to this demand. Rep. & Rec. at 7. Mr. Dantowitz informed plaintiff and her attorney that he did not have authority to offer that amount, but would attempt to secure such authority. *Id.*

On October 28, 2011, Mr. Dantowitz notified Mr. Barango-Tariah that the Comptroller's Office had authorized only an additional $1,500, increasing the total settlement offer to $21,500. *Id.* at 8. In the course of that conversation, in which plaintiff did not participate, Mr. Barango-Tariah offered to reduce his fees by $5,500 in order to increase the settlement payment to plaintiff. *Id.* Mr. Dantowitz revised the stipulation of settlement accordingly, and mailed it to Mr. Barango-Tariah for his review. *Id.* The stipulation stated that the City agreed to pay $47,026.15 in a check payable to "Da'Tekena Barango-Tariah, Esq., as attorney for Karlene Gordon," and directed Mr. Barango-Tariah to deliver payment to plaintiff in the amount of $27,000. Stip. & Order of Settlement & Discontinuance ¶ 3, ECF No. 26-2. On November 4, 2011, after correcting an apparent typographical error in the draft, Mr. Barango-Tariah signed the stipulation and returned it to defense counsel, noting in his cover letter that he "will send the other documents"—the release forms that both he and plaintiff were required to sign as a condition of settlement—"as soon as they are executed." Rep. & Rec. at 8-9.

At some point between October 28 and November 4, Mr. Barango-Tariah informed plaintiff that a settlement agreement had been reached under which she would receive the $27,000 she requested, and explained that a portion of that money would come out of attorney's

fees. *Id.* at 9. Plaintiff told her attorney that "she did not want his money," but did not reject the settlement agreement. *Id.* Over the next several days, plaintiff repeatedly told Mr. Barango-Tariah that she would sign the release forms, but did not ultimately do so. *Id.*

On the morning of November 10, 2011, plaintiff informed Mr. Barango-Tariah that she did not accept the settlement. *Id.* at 10. Plaintiff, Mr. Barango-Tariah, and Mr. Dantowitz appeared before Judge Go later that day to discuss the settlement agreement. *Id.* at 11. At that time, plaintiff confirmed that she did not want to settle and wanted to go forward with the case. *Id.* Defendants then filed the instant motion to enforce the settlement. *Id.* at 12. Plaintiff terminated Mr. Barango-Tariah as her counsel on December 14, 2011, and has proceeded pro se since then. *Id.*

## Report and Recommendation

Judge Go analyzed two questions in her Report and Recommendation on defendants' motion for settlement enforcement: First, whether Mr. Barango-Tariah had either actual or apparent authority to agree to a $27,000 settlement on plaintiff's behalf, where a portion of that payment was reallocated from attorney's fees. Second, whether the conversation between Mr. Barango-Tariah, Mr. Dantowitz, and plaintiff, on October 26 constituted a binding oral agreement.

While Judge Go found that Mr. Barango-Tariah had actual authority to make the $27,000 settlement demand on October 26, she implicitly concluded that he lacked actual authority to enter into the final, revised agreement two days later, observing that plaintiff "clearly did not agree to accept [the $27,000] through a reallocation of settlement monies which resulted in a reduction of her attorney's fees." *Id.* at 17. However, noting that *apparent* authority derives from the principal's representations to the third party, *id.* at 14, and finding that Mr. Dantowitz

4

"had no reason to doubt that Mr. Barango-Tariah had acted with his client's authority to agree to the revised settlement terms," Judge Go concluded that Mr. Barango-Tariah had apparent authority to enter into the settlement agreement reached on October 28, *id.* at 16.

Nevertheless, on the assumption that the absence of the signed release forms rendered the written stipulation unenforceable, *see id.* at 17-18, Judge Go proceeded to analyze whether the plaintiff's offer on October 26 to settle the case for $27,000 in damages, to which the City subsequently agreed, was enforceable, *id.* at 18-29. She concluded that plaintiff's willingness to accept $27,000 was "not sufficient to constitute an acceptance of the entire settlement that counsel later reached," and held the oral agreement unenforceable. *Id.* at 25, 28-29.

## II. DISCUSSION

### 1. Standard of Review

A district court judge is required to make a de novo determination of those portions of a magistrate judge's report or proposed recommendations to which objections were made. 28 U.S.C. § 636(b)(1). Even in the absence of objections, a district court may, in its discretion, conduct a *de novo* review. *Thomas v. Arn,* 474 U.S. 140, 154 (1985). In light of the extensive objections to Judge Go's analysis and findings, I review the entirety of her report and recommendations *de novo*.

### 2. Apparent or Actual Authority

"Apparent authority is based on the principle of estoppel," *Marfia v. T.C. Ziraat Bankasi, N.Y. Branch*, 100 F.3d 243, 251 (2d Cir. 1996) (citation omitted), and requires "reasonabl[e] . . . reliance" and "a detrimental change in position on the part of the third party," *Minskoff v. Am. Exp. Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996) (citations omitted). There is no evidence indicating that defendants' reliance on plaintiff's representations resulted in any

detrimental change in their position beyond the time spent preparing paperwork relating to the final settlement agreement. "Although the preparation of settlement paperwork may provide some indication of the preparer's belief that a settlement has been reached, it does not constitute a change in position, and no substantive rights of the parties have been affected in any way by the mere drafting of the documents." *Delgrosso v. City of New York*, No. 11-CV-4876 MKB, 2013 WL 5202581, at *8 (E.D.N.Y. Sept. 13, 2013) (citation omitted). Because the doctrine of apparent authority is inapplicable where the third party did not detrimentally rely on the principal's representations, a finding of apparent authority is not sufficient to compel the enforcement of the settlement agreement here.

Nevertheless, Mr. Barango-Tariah had *actual* authority to enter into a settlement pursuant to which plaintiff would receive $27,000. Plaintiff clearly authorized Mr. Barango-Tariah on October 26 to enter into such a settlement. Rep. & Rec. at 7. Indeed, plaintiff agreed to settle for $25,000, although she and her attorney decided to demand $27,000—the amount she ultimately received after the City increased the damages award by $1,500, and her attorney agreed to forgo $5,500 from the amount he had previously negotiated with her knowledge. *Id.* at 7-8. Moreover, while plaintiff commented that she "did not want [her attorney's] money," after she learned of the final oral agreement, she did not tell Mr. Barango-Tariah "that she would not accept the $27,000." *Id.* at 9. Nor, in subsequent conversations between October 28, the date on which the final agreement was reached orally, and November 10, did plaintiff either reject the settlement or reiterate her concerns about accepting her attorney's money. *Id.* According to Mr. Barango-Tariah's testimony, plaintiff also "promised multiple times to come to his office to sign the releases," though she never followed through. *Id.*

While there may be scenarios in which the amount of attorney's fees is material to plaintiff, *see Brown v. Gen. Motors Corp., Chevrolet Div.*, 722 F.2d 1009, 1011 (2d Cir. 1983), this case is not one of them. On the contrary, my reading of the record persuades me that plaintiff's half-hearted protest against taking her lawyer's money was neither a rejection of the settlement nor an indication of her motivation for later rejecting the settlement. Rather, when plaintiff appeared before Judge Go on November 10, 2011, she claimed that her unwillingness to settle stemmed from her desire "from the very beginning to go forward to trial with this case." 11/10/11 Tr. at 9:7-8. She explained further that, although she had "consider[ed] the amount" defendants were offering here, she could not accept it because "[i]t is much more than just dollars and cents here, way more." *Id.* at 9:12-17. While plaintiff had voiced a similar position a month before agreeing to accept a settlement of $27,000, it was inconsistent with positions she had taken on other occasions. Rep. & Rec. at 3, 5. The R&R specifically alluded to an earlier conversation with plaintiff in May 2011, "which focused primarily on the inadequacy of the settlement offer from defendants and not on a general unwillingness to settle." *Id.* at

"Whatever the explanation for the plaintiff's decision . . . a settlement agreement is binding notwithstanding a change of heart after the settlement is reached but before it is reduced to writing." *Delgrosso*, 2013 WL 5202581, at *6 (citations omitted). This observation is even more apt here, where the plaintiff's change of heart comes after the stipulation of settlement was reduced to writing and signed by her attorney. Under these circumstances, plaintiff's after-the-fact statement that she "did not want [her attorney's] money" has no bearing on whether Mr. Barango-Tariah had authority to enter into the settlement in the first instance.

Moreover, plaintiff was aware both that her attorney was engaged in separate negotiations with the City relating to attorney's fees, and that these negotiations had resulted in

7

the City's agreement to pay Mr. Barango-Tariah approximately $25,500.  Indeed, plaintiff stated under oath that she had read the stipulation of settlement containing the terms of the September agreement, 12/11/12 Tr. at 44:4-7, which included separate provisions for the damages she incurred and the counsel's fees independently negotiated by her attorney.  Mr. Barango-Tariah also reiterated at the September 22, 2011, conference, which plaintiff attended, that the attorney's fees were being addressed separately from the damages.  *See* 9/22/11 Tr. at 11:18-22.  The only differences between the September 2011 and October 2011 stipulations are found in the total amount of settlement, which was increased by $1,500, and the portion of the total settlement that plaintiff would receive, which was increased by $7,000 to accommodate plaintiff's expressed desire for an increase in the amount of damages she would personally receive.

### 3. Plaintiff's Objection to the Reallocation of Attorney's Fees

Judge Go concluded that, because "the allocation of fees must be approved by the settling parties, as they belong to the client, and not to the attorney," Rep. & Rec. at 25, plaintiff had the right to repudiate the final stipulation that her attorney signed.  While it is true that it is the "prevailing party" in a civil rights action, not the party's lawyer, who is entitled to seek attorney's fees under 42 U.S.C. § 1988, *Venegas v. Mitchell*, 495 U.S. 82, 87 (1990), this principle does not preclude plaintiff from granting her attorney the authority to negotiate both the amount of her damages and the counsel's fees to which he would be entitled.  Plaintiff is entitled to attorney's fees solely for the purpose of compensating her attorney.  Clearly she could not obtain an award of attorney's fees and keep it for herself.  Indeed, a party appearing pro se is not entitled to fees under § 1988, even if she is an attorney.  *Kay v. Ehrler*, 499 U.S. 432, 437-38 (1991); *see also Rheuark v. Shaw*, 628 F.2d 297, 300 n.1 (5th Cir. 1980) ("Congress intended 42 U.S.C. § 1988 to compensate attorneys not pro se litigants.").  Thus, in the usual course, the

stipulation of settlement provides—as it did in this case—for the payment of the entire amount of the settlement to the attorney, and directs him to deliver payment to the plaintiff in the amount she agreed to accept. As the Supreme Court observed in *Astrue v. Ratliff*, "attorneys are the beneficiaries, and, almost always, the ultimate recipients of the fees that the statute awards to 'prevailing parties.'" 560 U.S. 586, 598 (2010). This is particularly true where, as here, the attorney is entitled to payment under a retainer agreement.[2] Consequently, this line of cases does not preclude a plaintiff from authorizing her attorney to enter into an agreement to settle her claims for a set amount of damages and attorney's fees that he separately negotiates.

More significantly, because Mr. Barango-Tariah's fees were *reduced* in order to *increase* the amount of plaintiff's recovery, upholding the settlement agreement in this case would be consistent with *Evans v. Jeff D.*, in which the Supreme Court upheld a settlement agreement that conditioned relief on the waiver of all attorney's fees, 475 U.S. 717, 720, 731-32 & n.20 (1986) (describing attorney's fees as a "bargaining chip" that is part of "the arsenal of remedies available to combat violations of civil rights"), and with the underlying purpose of § 1988. Under these circumstances, and because I find that plaintiff's objection to the final stipulation of settlement was based on a change of heart, rather than any concern about the fact that her award was increased at her attorney's expense, the case law does not undermine my earlier conclusion about Mr. Barango-Tariah's authority to enter into the final settlement agreement.

---

[2] The Second Circuit also has not ruled out the possibility that § 1988 may "implicitly grant[] the prevailing party's attorney[] a lien on the fee award" notwithstanding "the established principle that the client has the power to waive the fee award altogether." *Valley Disposal Inc. v. Central Vt. Solid Waste Mgmt. Dist.*, 113 F.3d 357, 362 (2d Cir. 1997); *cf. Petition of Rosenman & Colin*, 850 F.2d 57, 61 (2d Cir. 1988) (under N.Y. Judiciary Law § 475, an "attorney may collect out of funds or property he obtains on behalf of his client, on the theory that 'it is the attorney who has created the fund out of which he is paid by his efforts.'" (citations omitted)).

### 4. The Failure of the City to Sign the Final Stipulation of Settlement

Under New York law, "[a]n agreement between parties or their attorneys relating to any matter in an action . . . is not binding upon a party unless it is in a writing subscribed by him or his attorney." N.Y. C.P.L.R. § 2104; *see also Powell v. Omnicom*, 497 F.3d 124, 129 n.1 (2d Cir. 2007) (applying New York law in assessing the enforceability of a settlement agreement after finding that "New York law and federal common law were materially indistinguishable" (citing *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997))). The oral agreement reached by Mr. Barango-Tariah and Mr. Dantowitz on October 28 satisfied N.Y. C.P.L.R. § 2104 because it was reduced to "a writing subscribed by [plaintiff's] attorney."

In what appears to be a slip of the pen in an unpublished opinion, however, the Second Circuit has suggested that, under New York law, a written settlement agreement that was not "executed by both sides" is not enforceable. *Aguiar v. New York*, 356 Fed. App'x 523, 525 (2d. Cir. 2009) (citation omitted). The relevant sentence in *Aguiar* reads as follows: "We have articulated four factors to guide the inquiry regarding whether parties intended to be bound by a settlement agreement *in the absence of a document executed by both sides*." *Id.* (emphasis added). Notwithstanding the italicized language, under New York law, a party is bound by a written settlement agreement signed by her attorney even where the other party has not executed it. Even so, on the assumption that the plaintiff was not bound by the stipulation of settlement because it was not signed by defendants, for the sake of completeness I proceed to analyze the contract under the four-prong test prescribed in *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985), and applied by Judge Go. The relevant considerations under this test are: (1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of

the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing. *Id.*

### (a) Express Reservation of Right Not to Be Bound in Absence of Signed Writing

Two provisions in the stipulation of settlement suggest that the parties did not intend to be bound absent a fully executed writing: First, the stipulation contains a merger clause in ¶ 10. Second, the stipulation states in ¶ 6 that the parties "shall execute and deliver to defendants' counsel all documents necessary to effect this settlement," including the release forms. While a merger clause is "persuasive evidence that the parties did not intend to be bound prior to the execution" of the written agreement, *Ciaramella*, 131 F.3d at 324 (citations omitted), the "execution of documents" clause is of less significance. Indeed, the requirement that plaintiff sign a release form was merely

> one of the various mutual obligations that the parties have undertaken to perform as part of the settlement, not a reservation of the right not to be bound in the absence of a signed settlement document. Indeed, the way the entire settlement is structured contemplates signatures by the attorneys on the written stipulation of settlement *before* any of the mutual obligations—i.e., the payment of the proceeds by the City and the execution and delivery of the release and affidavit—are to be performed. And it is often contemplated in settlement agreements . . . that the delivery of a release and similar documents will occur subsequently.

*Delgrosso*, 2013 WL 5202581, at *8. While it is relevant under the second *Winston* factor that plaintiff never signed the release form, the fact that the agreement requires her to do so as a condition of receiving payment does not prove that the parties did not intend to be bound in the absence of a fully executed written agreement.

11

### (b) Partial Performance of Contract

The second *Winston* factor asks whether "one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement." *Ciaramella*, 131 F.3d at 325. Because plaintiff is attempting to disclaim the agreement, the questions here are whether defendants—or Mr. Dantowitz as defendants' agent—partially performed under the agreement, and whether that performance was accepted by plaintiff.

Defendants' sole obligation under the settlement agreement is to make payment, and defendants have not performed this duty. The only reason they did not do so is because of the cloud that plaintiff's objection to the settlement cast over the validity of the agreement. They could hardly be expected to make payment until that issue was resolved. Mr. Dantowitz did, however, prepare the stipulation of settlement and send it to Mr. Barango-Tariah. Under these circumstances, defendants did everything they could reasonably have been expected to do. This factor therefore tips in favor of enforcement.

### (c) Agreement on All Material Terms

There is no dispute that an agreement was reached on all material terms, as memorialized in the stipulation of settlement. Indeed, Mr. Barango-Tariah made only one correction to the stipulation before signing and returning it to Mr. Dantowitz, and noted at that time that the signed release forms—i.e., plaintiff's performance of the contract—were forthcoming. Rep. & Rec. at 8-9. The attorneys' "agree[ment] to notify the Court of the settlement" is further indication that they did not anticipate undergoing any additional negotiations. *Id.* at 10. Moreover, for reasons which I have previously explained, I do not agree with Judge Go's finding that plaintiff's statement to her attorney, that she "did not want [his] money," established that she "considered the source of the settlement funds and the amount of the fees to be paid to Mr.

Barango-Tariah to be material terms of the agreement." *Id.* at 26. This factor weighs in favor of enforcement.

**(d) Type of Contract That is Usually Committed to Writing**

"Settlement agreements are the type of agreements usually committed to writing." *Aguiar*, 356 F. App'x at 525; *see also* N.Y. C.P.L.R. § 2104. Nevertheless, oral settlement agreements in cases involving the City have been deemed enforceable notwithstanding the absence of a writing. *Delgrosso*, 2013 WL 5202581, at *9 (listing cases). Moreover, the agreement in this case was, in fact, committed to a writing that was signed by the attorney of the party against whom the defendants seek to enforce the agreement. Thus, even if the agreement is not deemed to have been fully executed, the fact that it was memorialized in a writing weighs in favor of enforcement. *See, e.g.*, *Mone v. Park E. Sports Med. & Rehab., P.C.*, No. 99 CIV. 4990 (DFE), 2001 WL 1518263, at *3 (S.D.N.Y. Nov. 29, 2001) (finding that a settlement agreement "was committed to writing" under the fourth *Winston* factor where the defense attorney had created a "complete and formal draft Stipulation of Settlement"); *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 251 (E.D.N.Y. 2002) (implicitly concluding that the fourth *Winston* factor does not weigh against enforcement where "the written draft of the settlement had essentially been finalized," and "[t]he terms, with the exception of the final dollar amounts, were 'substantially complete' and 'largely reduced to writing'").

In sum, the first factor weighs against enforcement; the third factor weighs in favor of enforcement; and the second and fourth factors, at the very least, tip in favor of enforcement. Even if I concluded that under New York law, a party is not bound by a written settlement agreement signed by her attorney, my analysis of the *Winston* factors would lead me to uphold the agreement reached in this case.

## III. CONCLUSION

Because I find that Mr. Barango-Tariah had actual authority to enter into the October 28 settlement agreement, and that the agreement, as memorialized in the stipulation of settlement, is binding on plaintiff, defendants' motion to enforce the settlement is granted.

**SO ORDERED.**

Brooklyn, New York
March 31, 2015

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge